IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No: 4:03-CV-49-H4

JOHN EDWARD INMAN, )
        Plaintiff )
 )
vs. ) VERIFIED COMPLAINT
 )
 )
UNITED STATES OF AMERICA, )
        Defendant )

Plaintiff, complaining of the Defendant, alleges as follows:

1. This action arises under Title 28, United States Code, Section 2671 et seq. This Court has original jurisdiction over this action pursuant to Title 28 U.S.C. § 1346(b)(1), in that this is an action against the United States of America under the Federal Tort Claims Act.

2. Venue is proper in this District pursuant to Title 28 U.S.C. § 1391 and 28 U.S.C. 1402(b) as the acts or omissions complained of occurred in the Eastern District of North Carolina.

3. Plaintiff's claim arises out of and is based upon the negligence and wrongful acts or omissions of employees of the United States Department of Agriculture, Forest Service, acting within the course and scope of their office or employment under circumstances where the United States, if a private person, would

1

be liable to Plaintiff in accordance with North Carolina law, the place where the acts or omissions occurred. Plaintiff's claim against the United States is for money damages for injuries to his person.

4. Plaintiff is a citizen and resident of the State of Georgia. Plaintiff resided in Craven County, North Carolina on December 12, 1999.

5. Prior to December 12, 2001, Plaintiff, pursuant to 28 U.S.C. § 2675 timely presented his claim in writing to the United States Department of Agriculture, Forest Service.

6. Defendant United States Department of Agriculture, Forest Service, on November 19, 2003 made a final denial of the claim for the purposes of 28 U.S.C. § 2675(a). This action is filed within six months of said denial of plaintiff's claim, pursuant to 28 U.S.C. § 2401. A copy of said denial is attached hereto as Exhibit A to this complaint and incorporated by reference.

7. On Sunday, December 12, 1999, at approximately 7:30 p.m., Plaintiff, John Edward Inman, was operating his 1987 Ford Aerostar van in an southwesterly direction on Millis Road through Croatan National Forest, near Newport, Carteret County, North Carolina.

8. On December 12, 1999, Millis Road was a built-up dirt and gravel road established and located within the Croatan National Forest by the United States Forest Service of the United States Department of Agriculture (hereinafter sometimes referred to as "Forest Service"). On that date and for several years prior thereto (and presently), Millis Road was under the supervision and control of the United States Forest Service of the United States Department of Agriculture, which was, and is, responsible for its upkeep, maintenance and repair.

9. Millis Road was, on December 12, 1999, a well-traveled public road and thoroughfare across the Southwestern portion of Croatan National Forest, approximately 7.8 miles in length, connecting the State-maintained "Nine Mile Road" (sometimes also referred to as the "Nine-Foot Road") near Newport, NC with State-maintained "Whitehouse Lane" off of N.C. Highway 58 near Swansboro, North Carolina. The speed limit on Millis Road was 35 miles per hour.

10. Plaintiff's use of Millis Road at the time of the occurrence complained of was to traverse that portion of Croatan National Forest on said thoroughfare road and not as a recreational user of Croatan National Forest.

11. At the time and place hereinafter described, it was cloudy and a condition of darkness prevailed.

3

12. At approximately 7:30 p.m. on December 12, 1999, and while traveling at a lawful and reasonable speed and operating his passenger vehicle in a reasonable manner, Plaintiff rounded a curve on Millis Road and suddenly and unexpectedly came upon and struck a deep hole and rut in his path of travel which were unknown to Plaintiff and indiscernible to him by his headlights as he came out of the curve, due to darkness, the wooded background, and the color and texture of the road surface. That said deep hole and ruts caught the front wheel, severely jolting said vehicle and caused Plaintiff to strike his forehead sharply against the interior thereof and momentarily lose consciousness and the ability to direct his vehicle. That the impact of the front wheel of plaintiff's vehicle into the hole and ruts caused it to turn and go off the road to the left and strike a tree head-on in the edge of the woods, severely injuring plaintiff, as hereinafter alleged.

13. Several years prior to December, 1999, pursuant to 16 U.S.C.§§ 471a et seq. (National Forests Acts) and in particular, §§ 532 and 535 thereof and Regulations promulgated thereunder, Defendant's Forest Service laid out and constructed roads within Croatan National Forest, some for use only in the harvesting of timber, others, including Millis Road, used primarily by the general public as thoroughfare roads across that section of Croatan and incidentally by logging company customers of the Forest Service for transport of loaded trucks from logging roads connected therewith, out of the Forest to State Roads and the market.

4

14. Plaintiff is informed and believes and alleges that pursuant to said Congressional declaration of purpose and policy and Regulations adopted thereunder, including, but not limited, to 36 C.F.R. § 212, Defendant's Forest Service laid out, constructed and for several years prior to December, 1999, had maintained Millis Road, at a <u>minimum</u>, in a condition suitable and safe for the passage and use by logging customer vehicles to transport harvested timber out of Croatan National Forest (the "minimum logging road standard.")

15. Said mandated <u>minimum</u> standard applicable to Millis Road was established by Defendant's Croatan National Forest Service and intended by it to be uniformly and consistently followed. Plaintiff is informed, believes and alleges that said minimum maintenance standard is incorporated in pertinent part, in the Forest Service's written road maintenance standards entitled "STANDARD SPECIFICATIONS FOR ROAD MAINTENANCE, CROATAN NATIONAL FOREST" and "TECHNICAL SPECIFICATIONS FOR CROATAN ROAD MAINTENANCE" required to be followed as well by contractors engaged from time to time (of which the Forest Service provided an incomplete copy to plaintiff's FOIA request, but will be obtained in discovery). Said minimum road maintenance standards, established pursuant to said Statues and Regulations, required that the Forest Service remove by cutting out with blading equipment, ruts, potholes, corrugations and unnecessary berms in the road and scarifying to the depth of surfacing short road sections where numerous, deep defects have

developed, smoothly redistributing dislodged aggregate over the traveled way to produce proper cross slope or crown, 1/4" to 1/2" inch per foot; and further, to make spot repair of aggregate surface road defects and replace surface rock aggregate lost due to surface failure, traffic wear or erosion by cutting out or scarifying all damaged areas of the road surface without disturbing the base or sub-grade material and depositing new rock aggregate and working it to achieve proper grade, thickness and template and finished bladed over the entire traveled way to produce a proper slope or crown, in accordance with "Technical Section 'H'" established by the Forest Service (which plaintiff was not provided in response to his Freedom of Information Act Request to the Forest Service, but will obtain through discovery herein), and further, to maintain all ditches in their original location to the shape and grade required to ensure drainage of the roadway.

16. Plaintiff is further informed and believes, however, and upon information and belief alleges, that for several years prior to plaintiff's injury in December, 1999, Defendant's Forest Service had elected to maintain Millis Road to a standard even higher than the minimum logging truck standard, due to the nature of the expected and actual use of Millis Road by the general public in passenger vehicles as a thoroughfare road across the lower Southwestern quadrant of Croatan Forest as a shortcut to NC Highway 58, to the end that it would be maintained by the Forest Service virtually free of ruts, holes or other depressions, by whatever

description, that would interfere with reasonably safe and convenient passage by the general public as well as loggers.

17. The United States Forest Service engaged outside vendors from time-to-time to perform specified repair and maintenance on Millis Road and other roads to said established standard(s), but the Forest Service retained control and responsibility for the condition and safety of Millis Road and had a continuing, non-delegable and non-discretionary duty to plaintiff as a member of the anticipated and expected motoring public to maintain it to said standards in a condition fit for convenient use and safe travel.

18. At the time plaintiff was injured, however, no independent contractor was engaged to maintain Millis Road, and the Forest Service itself was maintaining Millis Road.

19. By building and undertaking to maintain Millis Road to a standard higher than that for use only as a logging road, that is, for extensive use by the general public as a thoroughfare road through Croatan Forest connecting two State-maintained roads and maintaining it to the standard thus adopted, being one maintained free of deep ruts, holes and other depressions of depth sufficient to catch a vehicle's wheel such as happened to plaintiff's, defendants thereby undertook a positive, non-discretionary duty to the general public to maintain Millis Road in a condition measuring up to that standard and thereby reasonably fit for safe and convenient use and travel. Defendant's Forest Service and its

employees contemplated, knew, and expected that Millis Road would be used by the general motoring public for the purposes hereinabove stated, and provided and expected it to be used for nighttime travel as well; the Croatan Forest Service knew that if it failed to maintain Millis Road properly and to the standard the Forest Service had adopted and established, injury to person or property could occur.

20. Defendant's Forest Service and its employees had a non-discretionary duty to anticipated users of Millis Road, including Plaintiff, to repair, re-establish, and maintain and keep up Millis Road in a condition reasonably safe and in keeping with the generally accepted road construction, repair, and maintenance practices to conform to the minimum standard it had established for Millis Road.

21. Defendant's Forest Service and its employees breached said duty, failing to properly inspect and maintain Millis Road according to generally accepted road construction and maintenance standards and practices to meet and conform to the minimum safe standard it had adopted and established for Millis Road; in particular, defendant's Forest Service failed to remove the deep ruts and hole which caused plaintiff's injuries (of which it knew, or in the exercise of reasonable care should have known) and restore the road to its previous reasonably safe and fit condition for the vehicular use the Forest Service expected and intended.

22. Defendant's Forest Service knew that deep holes and ruts in dirt and gravel roads such as Millis Road, howsoever characterized, are inherently dangerous to the safety of both logging truck operators and the general motoring public because of their propensity to suddenly stop or divert the wheel of any type of vehicle and cause loss of control and/or overturning and resultant injury to operators and occupants, and, in the case of a log truck, disruption and loss of its load.

23. The Forest Service and its employees knew that the danger from the deep ruts and holes it had allowed to develop in Millis Road was even greater at night due to the circumstance of reduced visibility.

24. In disregard of such knowledge and danger and in breach of the duty imposed upon the Forest Service by 16 U.S.C §§ 532 and 535 and 34 C.F.R. § 212 and other applicable regulations to maintain Millis Road, *at a minimum,* in accordance with generally accepted road construction and maintenance standards for a road reasonably safe and suitable for "harvesting and removal of timber" from Croatan Forest, as well as failing to maintain the road to the *higher* standard adopted and established several years earlier by the Croatan National Forest Service as a thoroughfare road suitable and safe for non-recreational thoroughfare use by the general motoring public as well as for loaded log trucks departing the Forest for market delivery, the Forest Service:

(a) negligently failed to properly and adequately maintain Millis Road to at least the minimum logging truck standard and failed to correct the defects in the road which rendered it unsafe for such minimum use;

(b) negligently failed to properly and adequately inspect and maintain Millis Road to the higher standard which it had elected and established as a thoroughfare road virtually free of significant road surface defects, safe and suitable for use by the general public in passenger vehicles, including nighttime use.

(c) negligently allowed Millis Road to fall into and continue in a dangerous state of disrepair unsafe for passage by the motoring public;

(d) negligently engaged in other negligent acts and negligent omissions to act as will be developed during discovery and/or trial.

25. By neglecting to maintain Millis Road and allowing the deep holes and ruts to develop and persist in the road unrepaired, Defendant's Forest Service negligently, knowingly and carelessly permitted it to deteriorate into an extremely dangerous state of disrepair unsafe and for use and travel by any vehicle, especially at night, which Plaintiff alleges constitutes, in law, gross negligence on the part of Defendant's Forest Service employees. Plaintiff further alleges that the conduct of the Forest Service under the circumstances was reckless and evidenced manifest

indifference to the likely consequences of knowingly failing to maintain Millis Road to said established minimum safe standard.

26. The occurrence and injuries alleged herein were the proximate result of the Defendant's negligence, in that had the road been properly maintained in a reasonably safe condition by Defendant and had there not existed the dangerous hole and deep ruts in plaintiff's path of travel at the time and place alleged herein, Plaintiff would not have been injured.

27. As a direct and proximate result of the negligence of employees of the United States Forest Service, as herein alleged, Plaintiff sustained serious, painful, and permanent injuries, including head injuries, loss of hearing in his left ear, multiple fractures to his neck, a fractured left collarbone and torn rotator cuff in his left shoulder joint, and he was otherwise injured.

28. As a result of said injuries, Plaintiff underwent spinal surgery and has been caused to endure severe physical pain and mental suffering and will continue to experience severe physical pain and mental suffering for the rest of his life. The injuries and residual effects thereof substantially disrupted plaintiff's social, recreational and personal life, and plaintiff's enjoyment of life has been permanently diminished. Plaintiff has been disabled since the date he was injured. He requires further neck surgery for a posterior fusion of his cervical spine and surgery for repair of the rotator cuff in his left shoulder. Plaintiff is severely and permanently functionally impaired and

will require medical care and treatment, pain management, and medicine for the rest of his life.

29. Plaintiff has been required to undergo extensive medical treatment for his injuries and has to date incurred charges for services of medical providers in excess of $47,000.00.

30. Plaintiff is continuing to incur charges for treatment and care of the injuries he sustained and the residual effects thereof and will continue to need medical treatment in the future and will incur future charges therefor.

31. Plaintiff continues to suffer physical pain and mental anguish, including disruption of and loss of enjoyment of life, and will continue to suffer therefrom in the future.

32. At the time he was injured, Plaintiff was 33 years of age, in excellent health, had a life expectancy of at least 44.7 years, was gainfully employed in a managerial position and capable of earning and did earn in excess of FORTY-THOUSAND DOLLARS ($40,000.00) per year. Plaintiff has been rendered disabled and unable to work by his injuries, has lost wages and income opportunities he otherwise would have had in excess of $130,000.00 as of the date of the filing of this complaint, has been left substantially and permanently physically impaired and vocationally disabled and his ability to work and earn money greatly diminished. Plaintiff has suffered a substantial and permanent diminution of his future earning capacity.

33. As a direct and proximate result of the negligence of employees of Defendant's United States Forest Service, Plaintiff suffered the injuries and damages to his person as hereinbefore alleged and has been damaged in the amount of $5,000,000, as set forth in his administrative claim heretofore filed.

WHEREFORE, the Plaintiff prays:

1. That the Plaintiff have and recover of the Defendant compensatory damages, exclusive of interest and costs, in the amount of $5,000,000 (Five Million Dollars), as set forth in his administrative claim heretofore filed.

2. That Plaintiff have and recover pre- and post-judgment interest from Defendant, as allowed by law;

3. That the costs of this action be taxed to the defendant;

4. For such other and further relief as to the Court may seem just and proper.

McCOTTER, ASHTON & SMITH, P.A.
ATTORNEY FOR PLAINTIFF

BY: *Charles K. McCotter*
Charles K. McCotter, Jr.
N.C. State Bar No. 5018
P.O. Box 12800
New Bern NC 28561-2800
(252) 635-1005
(252) 635-5050 fax

WHITE & ALLEN, P.A.
ATTORNEY FOR PLAINTIFF

BY: *Thomas J. White, III*
Thomas J. White, III
N.C. State Bar No. 4693
P.O. Box 3169
Kinston, NC 28502-3169
(252) 527-8000
(252) 527-8128 fax

**VERIFICATION**

STATE OF GEORGIA

COUNTY OF BERRIEN

JOHN EDWARD INMAN, being duly sworn, deposes and says:

I have read the foregoing VERIFIED COMPLAINT and know the contents thereof, and the same is true of my own knowledge, except as to those matters and things therein stated upon information and belief, and as to those matters and things, I believe it to be true.

This the April day of 21 2003.

_____
JOHN EDWARD INMAN

Sworn and subscribed to before me this the 21 day of April, 2003.

_____
Notary Public

My Commission Expires: Notary Public, Lowndes County, Georgia
My Commission Expires Jan. 13, 2005

-14-

Inman Complaint



| United States Department of Agriculture | Office of the General Counsel | Washington, D.C. 20250-1400 |

NOV

CERTIFIED MAIL -- RETURN RECEIPT REQUESTED

Charles K. McCotter, Jr.
McCotter, McAfee & Ashton, PLLC
3515 Trent Road, No. 10
New Bern, North Carolina 28562

Subject: Federal Tort Claim of John Edward Inman

Dear Mr. McCotter, Jr.:

The Standard Form 95 submitted by your client on December 5, 2001, to the Forest Service, filed pursuant to the Federal Tort Claims Act (FTCA), has been reviewed carefully by this office. Our review of his claim discloses no liability on the part of the United States. Your client's claim, therefore, is denied.

The FTCA is a limited surrender of the sovereign immunity of the United States. United States v. Orleans, 425 U.S. 807, 813 (1976). The United States, as sovereign, is immune from suit, except to the extent it consents to be sued. The FTCA provides that the United States shall be liable for death, personal injury, or property damage caused by the negligent or wrongful act or omission of any employee of the agency acting within the scope of his or her office or employment, under circumstances where a private person would be liable in accordance with the law of the place where the act or omission occurred. 28 U.S.C. §§ 1346(b), 2674. Our review discloses no property damage or personal injury resulting from negligence or a wrongful act on the part of an employee of the Government.

Your client has the right to file suit in an appropriate United States District Court within six months of the date of the mailing of this letter if he is dissatisfied with the results of this determination.

Sincerely,

Betty Ollila
Acting Assistant General Counsel
General Law Division